Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL V (ESPECIAL)

| | | |
|---|---|---|
| RAMÓN LUGO MORILLO<br><br>*Apelado*<br><br>v.<br><br>ELIZABETH NATERA MONTILLA<br><br>*Apelante* | KLAN202300381 | Apelación procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Núm.: SJ2023CV00682 (802)<br><br>Sobre: Desahucio en Precario |

Panel integrado por su presidente, el Juez Hernández Sánchez, la Jueza Santiago Calderón y la Jueza Álvarez Esnard

Santiago Calderón, Jueza Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 7 de diciembre de 2023.

Comparece ante nos la señora Elizabeth Natera Montilla (señora Natera Montilla o apelante) mediante recurso de *Apelación* y nos solicita la revocación de la *Sentencia* emitida el 19 de abril de 2023, notificada el 21 de abril del mismo año, por el Tribunal de Primera Instancia, Sala Superior de San Juan (TPI). Mediante el aludido dictamen, el foro primario declaró Ha Lugar la *Demanda* de desahucio instada por el señor Ramón Lugo Morillo (señor Lugo Morillo o apelado).

Por los fundamentos que exponemos a continuación, **confirmamos** la *Sentencia* apelada.

## I.

El 25 de enero de 2023, el señor Lugo Morillo presentó *Demanda*[1] sobre desahucio en precario contra la apelada. En esencia, manifestó ser el dueño de la propiedad que ocupaba la señora Natera Montilla. Sostuvo que ésta no pagaba canon o merced de clase alguna, por lo que era una precarista. Añadió que la apelada

---

[1] Apéndice del recurso de *Apelación*, págs. 5-6.

Número Identificador
SEN2023_____

se había negado a desocupar la propiedad luego de habérselo requerido[2]. En vista de ello, solicitó el desahucio, el desalojo y el lanzamiento de esta.

El 26 de enero de 2023, el TPI expidió el emplazamiento correspondiente y señaló vista para el 3 de febrero de 2023[3]. El 2 de febrero de 2023, previo a la celebración de la vista, la señora Natera Montilla presentó un *Escrito urgente asumiendo representación legal y en solicitud de nuevo señalamiento*[4]. Por medio de este, requirió de un término adicional para presentar las alegaciones responsivas pertinentes. Al próximo día, 3 de febrero de 2023, el señor Lugo Morillo presentó *Oposición a: "Escrito urgente asumiendo representación legal y en solicitud de nuevo señalamiento"*[5], en el que sostuvo que no existía justa causa para recalendarizar la vista señalada por el foro primario. No obstante, en esta misma fecha, el TPI realizó un nuevo señalamiento para el 10 de febrero de 2023[6].

El 9 de febrero de 2023, la señora Natera Montilla presentó *Escrito en solicitud de desestimación de la demanda presentada y/o en la alternativa la conversión del presente caso a uno ordinario*[7]. Argumentó que ella y el apelado mantuvieron una relación de más de veintisiete (27) años que perduró hasta noviembre del 2022, y que durante dichos años mantuvieron una comunidad de bienes. Manifestó que se había constituido un "concubinato de carácter implícito"[8], por lo que existía un conflicto de título que debía ventilarse en un procedimiento ordinario. A esos efectos, solicitó la desestimación del pleito o, en su alternativa, la conversión de los procedimientos al cauce ordinario.

---

[2] *Íd.*, págs. 103-107.
[3] *Íd.*, págs. 10-14.
[4] *Íd.*, págs. 25-26.
[5] *Íd.*, págs. 27-71.
[6] *Íd.*, pág. 90-91.
[7] *Íd.*, págs. 72-79.
[8] *Íd.*, pág. 78.

El 10 de febrero de 2023, el señor Lugo Morillo presentó *Oposición a la mal llamada "Moción de desestimación de la demanda presentada y/o en la alternativa a la conversión del presente el caso a uno ordinario"[sic]*[9]. Sostuvo que el concubinato no presumía la existencia de una comunidad de bienes entre los concubinos y que la mera alegación de que existía un conflicto de título no era suficiente para derrotar la acción de desahucio.

En la misma fecha, tras evaluar los escritos de las partes, el foro primario declaró No Ha Lugar la moción dispositiva instada por la señora Natera Montilla[10]. Más tarde, ese mismo día, se celebró la vista señalada a través de videoconferencia. Durante esta, la apelante solicitó la reconsideración de la moción de desestimación, pero el TPI dispuso No Ha Lugar[11]. Así las cosas, el juicio en su fondo comenzó con el testimonio del señor Lugo Morillo. Mientras se llevaba a cabo el interrogatorio, el representante legal de la apelada confrontó problemas de conexión que lo llevaron a desconectarse, lo que provocó un nuevo señalamiento de vista para el 8 de marzo de 2023, a los fines de continuar con el juicio en su fondo. Llegado el 8 de marzo de 2023, ni la apelante ni su representante legal comparecieron a la audiencia, por lo que el foro primario recalendarizó la vista para el 5 de abril de 2023[12].

El 5 de abril de 2023, ambas partes comparecieron a la vista. Allí, continuó el interrogatorio del señor Lugo Morillo y, posteriormente, fue contrainterrogado. Luego, prestó testimonio la señorita Nicole Lugo Natera, hija de las partes. Finalmente, testificó la señora Natera Montilla. A preguntas del representante legal del apelado, ésta expresó que no tenía documentos que indicaran que

---

[9] *Íd.*, págs. 80-84.
[10] *Íd.*, pág. 85.
[11] *Íd.*, págs. 92-93.
[12] *Íd.*, pág. 95a. Se hace constar que el 14 de marzo de 2023, la señora Natera Montilla compareció mediante *Escrito en cumplimiento de orden de mostrar causa*, a través de la cual indicó que la incomparecencia fue producto de un error de calendario.

el inmueble en cuestión le perteneciera[13]. Cabe destacar que, durante la vista, y tras múltiples objeciones por la representación legal del apelado, el TPI determinó que no se permitirían "preguntas relacionadas a la comunidad de bienes, ingresos, planilla de contribución sobre ingresos ni sobre trámites de compraventa"[14]. Tras dicha determinación, el abogado de la apelante expresó no tener más preguntas[15], tampoco objetó para récord la determinación del TPI.

El 19 de abril de 2023, notificada el 21 de abril del mismo año, el TPI emitió la *Sentencia*[16] apelada, en la que declaró Ha Lugar la acción de desahucio. El foro primario concluyó que la titularidad del señor Lugo Montilla sobre el inmueble en controversia había quedado demostrada, así como también se había demostrado que la apelante no tenía título o derecho alguno a la posesión de este. A tenor, y de conformidad al Artículo 625 del Código de Enjuiciamiento Civil[17], el foro de instancia ordenó el desalojo de la propiedad en un término de veinte (20) días, contados a partir de que el dictamen fuera final y firme.

En desacuerdo, el 28 de abril de 2023, la señora Natera Montilla presentó el recurso de epígrafe y señaló al TPI la comisión de los siguientes errores:

> ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL DECLARAR NO HA LUGAR LA SOLICITUD DE DESESTIMACIÓN Y/O CONVERSIÓN A PROCEDIMIENTO ORDINARIO PRESENTADA POR LA APELANTE ELIZABETH NATERA MONTILLA.
>
> ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL NO PERMITIR A LA PARTE APELANTE PRESENTAR PRUEBA SOBRE LA COMUNIDAD DE BIENES EXISTENTE ENTRE LA APELANTE ELIZABETH NATERA MONTILLA Y EL APELADO RAMÓN LUGO MORILLO, ASÍ COMO SOBRE LOS GASTOS Y APORTACIONES ECONÓMICAS HECHAS POR LA SRA. NATERA A LA PROPIEDAD Y AL HOGAR CONSTITUIDO ENTRE AMBOS.
>
> ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL DICTAR SENTENCIA Y ORDENAR EL LANZAMIENTO DE LA APELANTE ELIZABETH NATERA MONTILLA, VÍCTIMA DE VIOLENCIA DE GÉNERO, SEGÚN SOLICITADO

---

[13] Transcripción de la prueba oral, 5 de abril de 2023, pág. 140, líneas 20-25.
[14] Apéndice del recurso de *Apelación*, pág. 212.
[15] Transcripción de la prueba oral, 5 de abril de 2023, pág. 140, líneas 6-13.
[16] Apéndice del recurso de *Apelación*, págs. 2-4.
[17] 32 LPRA sec. 2826.

POR SU AGRESOR, EL APELADO RAMÓN LUGO MORILLO, RE
VICTIMIZÁNDOLA Y PRIVÁNDOLE DE UNA VIVIENDA SOBRE LA CUAL
TIENE UNA COMUNIDAD DE BIENES CON EL APELADO.

Tras varios trámites procesales innecesarios pormenorizar, el señor Lugo Morillo compareció el 15 de noviembre de 2023 mediante *Alegato en oposición a recurso de apelación y desestimación*.

Con el beneficio de la comparecencia de ambas partes, así como la transcripción de la prueba oral estipulada por las partes, procedemos a resolver.

**II.**

**-A-**

La moción de desestimación al amparo de la Regla 10.2 de Procedimiento Civil[18], "es aquella que formula el demandado antes de presentar su contestación a la demanda, en la cual solicita que se desestime la demanda presentada en su contra"[19]. La citada regla dispone que la parte demandada puede presentar una moción de desestimación en la que alegue las defensas siguientes:

(1) falta de jurisdicción sobre la materia;
(2) falta de jurisdicción sobre la persona;
(3) insuficiencia del emplazamiento;
(4) insuficiencia del diligenciamiento del emplazamiento;
(5) dejar de exponer una reclamación que justifique la concesión de un remedio;
(6) dejar de acumular una parte indispensable[20].

Al resolver una moción de desestimación bajo la Regla 10.2 (5), *supra*, los tribunales deberán tomar "como ciertos todos los hechos bien alegados en la demanda y que hayan sido aseverados de manera clara y concluyente, y que de su faz no den margen a dudas"[21]. La norma que impera es que "tales alegaciones hay que interpretarlas conjuntamente, liberalmente, y de la manera más favorable posible para la parte demandante"[22]. Por lo tanto, "al examinar la demanda para resolver este tipo de moción se debe ser

---

[18] 32 LPRA Ap. V, R. 10.2.
[19] *Aut. Tierras v. Moreno & Ruiz Dev. Corp.*, 174 DPR 409, 428 (2008).
[20] *González Méndez v. Acción Social de Puerto Rico*, 196 DPR 213, 234 (2016).
[21] *Aut. Tierras v. Moreno & Ruiz Dev. Corp., supra*, pág. 428.
[22] *Íd.,* pág. 429.

sumamente liberal y 'únicamente procedería [desestimar] cuando de los hechos alegados no podía concederse remedio alguno a favor del demandante'"[23]. Además, "[t]ampoco procede la desestimación, si la demanda es susceptible de ser enmendada"[24].

Nuestro máximo foro judicial ha expresado que al examinar una moción de este tipo "debemos considerar, 'si a la luz de la situación más favorable al demandante, y resolviendo toda duda a favor de [e]ste, la demanda es suficiente para constituir una reclamación válida'"[25]. Además, el Tribunal debe aceptar como ciertos todos los hechos que hayan sido bien alegados en la demanda y excluir de sus análisis conclusiones legales. Luego, debe determinar si, a base de esos hechos que aceptó como ciertos, la demanda establece una reclamación plausible que justifique la concesión de un remedio. Si de este análisis el Tribunal entiende que no se cumple con el estándar de plausibilidad entonces debe desestimar la demanda, pues no debe permitir que proceda una demanda insuficiente bajo el pretexto de que se podrán probar las alegaciones conclusorias con el descubrimiento de prueba[26].

**-B-**

En lo pertinente a la controversia que nos ocupa, el Tribunal Supremo de Puerto Rico ha establecido que el desahucio es un procedimiento especial de naturaleza sumaria, cuya finalidad es recuperar la posesión de una propiedad inmueble mediante el lanzamiento o expulsión del arrendatario o precarista que la detente[27]. Este procedimiento es regulado por el Código de

---

[23] *Colón Rivera v. Secretario, et al*, 189 DPR 1033, 1049 (2013), que cita a R. Hernández Colón, *Derecho Procesal Civil*, 4ta ed., San Juan, Ed. Lexis-Nexis, 2007, pág. 231.

[24] *Aut. Tierras v. Moreno & Ruiz Dev. Corp., supra*, pág. 429.

[25] *Íd.*, pág. 429 que cita a *Pressure Vessels P.R. v. Empire Gas P.R.*, [137 DPR 497 (1994)], *Unisys v. Ramallo Brothers*, 128 DPR 842 (1991).

[26] R. Hernández Colón, *Derecho Procesal Civil*, 5ta ed., San Juan, LexisNexis, 2010, pág. 268.

[27] Véase, *Turabo Ltd. Partnership v. Velardo Ortiz*, 130 DPR 226, 234-235 (1992); *Mora Dev. Corp. V. Sandín*, 118 DPR 733, 749 (1987); *C.R.U.V. v. Román*, 100 DPR 318, 321 (1971); *Fernández & Hno. V. Pérez*, 79 DPR 244 (1956).

Enjuiciamiento Civil de Puerto Rico, cuyas normas determinan el curso a seguir en las acciones de desahucio[28].

El procedimiento sumario de desahucio persigue principalmente recobrar la posesión de un inmueble por quien tiene derecho a ella[29]. A modo de excepción, cuando la demanda se fundamenta en la falta de pago del canon o precio convenido, es posible acumular en el mismo procedimiento judicial, una acción en cobro de dinero[30]. En estos casos no se admitirá otra prueba que no sea el recibo o cualquier otro documento en que conste haberse verificado el pago[31].

En casos apropiados el demandado puede presentar otras defensas afirmativas íntimamente relacionadas con la causa del desahucio, de forma tal que el procedimiento se torne en ordinario[32]. Ello, en reconocimiento de que el derecho de dominio no es de atribución absoluta de su titular, y puede ceder ante intereses sociales de orden superior.

Sin embargo, la necesidad de convertir el procedimiento sumario en uno ordinario no puede ocasionar dilaciones innecesarias, por lo que el demandado deberá establecer *prima facie* los méritos de su defensa[33]. La guía en estos casos deberá ser el sano discernimiento judicial. Una vez se esgrimen las defensas pertinentes, el juzgador deberá auscultar sus méritos, los hechos específicos que se aducen y discrecionalmente ordenar la conversión del procedimiento al juicio ordinario[34].

En Fernández & Hno. v. Pérez, *supra,* el Tribunal Supremo resolvió expresamente lo siguiente:

---

[28] 32 LPRA sec. 2821, *et seq.*
[29] *Fernández & Hno. v. Pérez, supra*, págs. 247-248.
[30] 32 LPRA sec. 2829.
[31] *Íd.*
[32] Véase, *Mora Dev. Corp. v. Sandín, supra*, págs. 747-748; *Jiménez v. Reyes,* 146 DPR 657 (1998); *Turabo Ltd. Partnership v. Velardo Ortiz, supra,* a la pág. 245.
[33] *Mora Dev. Corp. v. Sandín, supra,* a la pág. 750*; Marín v. Montijo,* 109 DPR 268 (1979); *Brunet v. Corte,* 45 DPR 901 (1933).
[34] *Turabo Ltd. Partnership v. Velardo Ortiz, supra,* a las págs. 245-246.

El beneficio de la economía y rapidez del trámite sumario se perdería si la acción no queda restringida a la consideración y resolución de la cuestión estricta para la que se ha creado: la recuperación de la posesión material en los casos determinados por la ley. De ahí que el tratamiento de todos los demás derechos y cuestiones accesorias o colaterales sólo corresponde a la acción ordinaria y que el único pronunciamiento en la sentencia de desahucio es si procede o no ordenar el desalojo[35].

**-C-**

Reconocemos que los Tribunales de Primera Instancia tienen una gran discreción en el manejo de los procedimientos celebrados en sus salas. En su misión de hacer justicia, la discreción es el más poderoso instrumento reservado a los jueces[36]. En el ámbito del desempeño judicial, la discreción no significa poder para actuar en una forma u otra, haciendo abstracción del resto del derecho; ciertamente, esto constituiría un abuso de discreción. La discreción es una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera[37]. Tal conclusión justiciera deberá estar avalada por el convencimiento del juzgador de que la decisión tomada se sostiene en el estado de derecho aplicable a la cuestión planteada. Ese ejercicio constituye "la razonabilidad" de la sana discreción judicial[38].

En el contexto de esa doctrina, debemos tener presente el alcance de nuestro rol como foro apelativo al intervenir precisamente con la discreción judicial. Es norma reiterada que este foro no habrá de intervenir con el ejercicio de la discreción del Tribunal de Instancia, salvo en caso de "un craso abuso de discreción o que el tribunal actuó con prejuicio y parcialidad, o que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, y que nuestra intervención en esa etapa evitará un perjuicio sustancial"[39].

---

[35] *Fernández & Hno. v. Pérez, supra,* a las págs. 247–248.
[36] *Banco Metropolitano v. Berríos,* 110 DPR 721, 725 (1981).
[37] *Bco. Popular de P.R. v. Mun. de Aguadilla,* 144 DPR 651, 657-658 (1997).
[38] *Negrón v. Srio. De Justicia,* 154 DPR 79, 91 (2001).
[39] *Lluch v. España Service Sta.,* 117 DPR 729, 745 (1986).

## III.

Tras un estudio meticuloso de los escritos de las partes, los documentos que obran en el expediente y la transcripción de la prueba oral, procedemos a evaluar el recurso de epígrafe. Por estar estrechamente relacionados entre sí, discutiremos de manera conjunta los señalamientos de error aducidos por la apelante.

En apretada síntesis, la señora Natera Montilla aduce que existen tres (3) razones por las cuales procedía la solicitud de desestimación o, en la alternativa, la conversión del pleito al procedimiento ordinario, a saber: (1) la existencia de una comunidad de bienes entre ella y el señor Lugo Morillo, producto del concubinato entre ambos; (2) el derecho de retención para evitar un enriquecimiento injusto, toda vez que, según alega, realizó gastos cuantiosos en la propiedad; y (3) el derecho de retención que le asiste como poseedora, hasta tanto se le indemnice por incumplimiento con la obligación cuasicontractual[40].

Por su parte, el señor Lugo Morillo sostiene que, en el presente pleito, lo único que debe evaluarse es quién tiene mejor título. Arguye que la solicitud de desestimación presentada por la señora Natera Montilla está basada en un asunto incierto. Indica, además, que dicha moción dispositiva no es el vehículo procesal adecuado para traer una causa de acción y solicitar un remedio, como lo supondría el reconocimiento de que existe una comunidad de bienes entre la apelante y el apelado.

Como cuestión de umbral, razonamos meritorio señalar dos asuntos relacionados a los argumentos presentados por la apelante que, según asevera, justificaban la desestimación o la conversión del pleito a la vía ordinaria. En primer lugar, advertimos que el alegato sobre un supuesto derecho de retención que le asiste no fue

---

[40] Apéndice del recurso de *Apelación,* pág. 15.

expuesto ante el foro primario. En segundo lugar, precisamos que la aseveración sobre la presunta existencia de una comunidad de bienes entre el apelado y la apelante fue presentada por la señora Natera Montillo como parte de una solicitud de desestimación, y no como una defensa afirmativa ni a manera de reclamación. Recordemos que "las alegaciones son los escritos mediante los cuales las partes presentan los hechos en que apoyan o niegan sus reclamaciones o defensas"[41]. Además, la Regla 5.1 de Procedimiento Civil enumera taxativamente las alegaciones que nuestro ordenamiento civil reconoce, a saber: la demanda, la contestación a la demanda, la reconvención, la réplica a la reconvención, la demanda contra coparte, la contestación a la demanda contra coparte, la demanda contra tercero, y la contestación a la demanda contra tercero[42].

De la transcripción de la prueba oral, correspondiente al día 3 de febrero de 2023, surge la intención de la apelante de presentar una contestación a la demanda. En específico, surge lo siguiente:

> HON. JUEZA:
> Bueno, el licenciado indicó que iba a contestar la demanda. El tribunal le indicó que no es requisito en esta etapa de los procedimientos.
>
> [...]
>
> No obstante, si va a presentar contestación tampoco el tribunal la va a rechazar.
>
> [...]
>
> Tiene que presentarla en o antes del 10 de febrero, toda vez que la vista está para verse el 10 de febrero.
>
> LCDO. RODRÍGUEZ:
> Sí, no, yo la presentaré a más tardar el lunes con lo que tenga...[43]

No obstante, del expediente no surge que la alegación responsiva haya sido presentada. Tampoco surge que la señora

---

[41] *Conde Cruz v. Resto Rodríguez et. al,* 205 DPR 1043 (2020).
[42] 32 LPRA Ap. V, R. 5.1.
[43] Transcripción de la prueba oral, 3 de febrero de 2023, pág. 14, líneas 14-16, 19-21 y pág. 15, líneas 1-6.

Natera Montilla haya presentado alguna de las otras alegaciones que reconoce nuestro ordenamiento jurídico. Tal inacción por parte de la apelante resultó en un impedimento para que el foro primario estuviese en posición de evaluar si, en efecto, procedía la conversión del pleito al trámite ordinario.

En cualquier caso, aun cuando la señora Natera Montilla hubiese presentado una alegación a través del mecanismo procesal propio para ello, lo cual no ocurrió, debe tenerse presente que la conversión al procedimiento ordinario en un caso de desahucio, cuando la parte demandada alega que existe un conflicto de título, no opera en automático. Nuestro alto foro ya ha resuelto que, en estos casos, la guía para prorrogar términos, posponer señalamientos y permitir enmiendas a las alegaciones lo es el sano discernimiento judicial[44]. Es decir, que el foro de instancia tiene total discreción para ordenar o no la conversión del procedimiento sumario al trámite ordinario. Además, de ordinario, las determinaciones discrecionales del foro primario relacionadas con el manejo del caso merecen nuestra deferencia, a menos que se demuestre que la determinación tomada por este fue irrazonable, abusó de su discreción o incurrió en un menoscabo a la justicia.

Tras examinar el recurso presentado por la apelante y los documentos que obran en el expediente, no encontramos razón alguna para intervenir con la discreción del TPI, ni desvirtuar el carácter sumario del procedimiento. Si bien es cierto que quedó probada la existencia de una relación de pareja entre las partes, la cual perduró hasta noviembre del año 2022, somos del criterio que la alegada comunidad de bienes entre estos -producto del concubinato-, no configura el conflicto de título que derrotaría la pretensión del apelado de recuperar la posesión del inmueble.

---

[44] *Turabo Ltd. Partnership v. Velardo Ortiz, supra,* págs. 245-246.

Razonamos también que, los supuestos gastos que realizó la apelante en la propiedad tampoco constituyen un conflicto de título. En su lugar, y a la luz de la normativa jurídica esbozada, entendemos que cualquier asunto relacionado a la alegada comunidad de bienes, o asociado a cuantías realizadas para el mantenimiento de la propiedad, **debe ventilarse en un pleito independiente**.

Ante las circunstancias específicas de este caso, colegimos que no procedía la conversión del pleito al cauce ordinario, el asunto ante la consideración del foro primario se reducía a determinar si procedía o no la acción de desahucio. De la prueba examinada, surge que el señor Lugo Morillo probó su titularidad sobre la propiedad en controversia. El apelado presentó copia certificada de la escritura de compraventa[45], la cual demuestra que adquirió la propiedad en carácter privativo allá para el año 2007. También presentó una certificación de propiedad inmueble[46], así como un estudio de título[47]. Ambos documentos reflejan que el único titular de la propiedad es el señor Lugo Morillo. Por el contrario, no surge del expediente título o derecho alguno por parte de la señora Natera Montillo.

De conformidad a ello, avalamos el dictamen emitido por el foro primario. Toda vez que la apelante no probó causa alguna que justificara su posesión y el disfrute de la propiedad, así como tampoco encontramos que medió arbitrariedad o error, ni abuso de discreción por parte del foro recurrido, por tanto, no encontramos fundamento para intervenir con la determinación de este. En consecuencia, concluimos que procede el desahucio de la apelante.

---

[45] Apéndice del recurso de *Apelación*, págs. 116-127.
[46] *Íd.*, págs. 112-113.
[47] *Íd.*, págs. 108-111.

**IV.**

Por los fundamentos antes expuestos, **confirmamos** la *Sentencia* emitida por el foro primario.

Notifíquese.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones